```
            IN THE UNITED DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF FLORIDA

                CASE NO.: 1:20cv21516



MARIE ALTIDOR,

      Plaintiff,

VS.

CARNIVAL CORPORATION, a foreign corporation,
d/b/a CARNIVAL CRUISE LINES,

      Defendant.
_____/




         VIDEOTAPED DEPOSITION OF SUZANNE VAZQUEZ

            TAKEN ON BEHALF OF THE PLAINTIFF

                   DECEMBER 8, 2020
                10:00 A.M. TO 3:14 P.M.

              ALL PARTIES APPEARED REMOTELY
                      PURSUANT TO
          FLORIDA SUPREME COURT ORDER AOSC20-23




REPORTED BY:
YENLY CALVO, FPR, COURT REPORTER
NOTARY PUBLIC, STATE OF FLORIDA
```



UNIVERSAL COURT REPORTING
877.291.3376
www.UCRinc.com

EXHIBIT 4

```
 1              APPEARANCES OF COUNSEL

 2   ON BEHALF OF THE PLAINTIFF:

 3       MATTHEW SEAN TUCKER, ESQUIRE
         TUCKER LAW
 4       200 SOUTHEAST 6TH STREET
         SUITE 405
 5       FORT LAUDERDALE, FLORIDA 33301
         (954)204-0444
 6       matt@tuckerup.com
         (REMOTELY VIA ZOOM)
 7
     ON BEHALF OF THE DEFENDANT:
 8
         STEPHANIE HURST WYLIE, ESQUIRE
 9       HORR, NOVAK & SKIPP, P.A.
         9130 SOUTH DADELAND BOULEVARD
10       SUITE 1700
         MIAMI, FLORIDA 33156
11       (305)670-2525
         swylie@admiral-law.com
12       (REMOTELY VIA ZOOM)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                INDEX OF EXAMINATION

 2   WITNESS:  Suzanne Vazquez
                                                         PAGE
 3   DIRECT EXAMINATION
          By Matthew Sean Tucker, Esquire                  6
 4
     CROSS EXAMINATION
 5        By Stephanie Hurst Wylie, Esquire               190

 6   RE-DIRECT EXAMINATION
          By Matthew Sean Tucker, Esquire                 191
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 4

```
 1                    INDEX OF EXHIBITS

 2   EXHIBIT            DESCRIPTION                 PAGE

 3   PLAINTIFF'S

 4      1      Plaintiff's Amended Notice of
               Taking Videotaped Deposition
 5             Duces Tecum                            7

 6      2      Michelangelo Lounge's Photograph      16

 7      3      Defendant's Second Response to
               Plaintiff's Request for Production    21
 8
        4      Defendant's Supplemental Responses
 9             to Plaintiff's Request for Production 40

10      5      Photograph                            55

11      6      Work Order of The Sensation
               for 4/19/19 to 11/19/19               67
12
        7      The Sensation Deck Plan              145
13
```



EXHIBIT 4

```
 1      Q    What are the kind of goals and procedures to
 2   inspect the bar stools for -- seats in the Michelangelo
 3   Lounge?
 4      A    So the housekeeping staff every -- The
 5   housekeeping staff every night, when they're cleaning
 6   the lounge, they clean off the top of the seat and feel
 7   the seat, and if they notice it to be loose or wobbly,
 8   they put in a Work Order, and that seat is taken out of
 9   service or many times its just maintenance comes down
10   and handles it that night.  I think even housekeeping
11   themselves can close up the Work Order; I'd have to look
12   at each Work Order to see who opened it and who closed
13   it.  And also, I believe they're sort of visually
14   inspected all day, every day; there's bar staff that are
15   right there around the bar.  So if someone
16   hypothetically got on top of a bar stool and said "Oh,
17   this is wobbly," they would immediately notify
18   housekeeping to issue the Work Order, take it out of
19   service and stabilize it before someone else sat on it.
20      Q    If it's your testimony that the bar stool
21   seats in the Michelangelo Lounge do not regularly become
22   loose, why is it necessary then for the housekeeping
23   staff to check it every single day, 365 days a year?
24      A    It's not that they're checking them for that.
25   But they are cleaning them and if they are loose, which
```



UNIVERSAL COURT REPORTING      877.291.3376
EXHIBIT 4                      www.UCRinc.com

1  happens rarely, but it does happen as evidenced by the
2  Work Orders, they will issue a Work Order and rectify
3  the wobbliness of the top of the bar stool.
4       **Q   Please tell me about the incident that**
5  **occurred on April 19th of 2019.**
6            MS. WYLIE:  Objection to form.
7       A    What would you like to know?  It's kind of an
8  open ended question.
9       **Q   (By Mr. Tucker)  It's open ended, what do you**
10 **know about it?**
11      A    That your client was traveling onboard The
12 Sensation for her birthday with seven family members, I
13 think.  I think she and her best friends and traveling
14 companions we're going to see the show in the lounge
15 next to -- I mean, in the theater next to the
16 Michelangelo Lounge, which was around 10:30 at night.
17 Your client claims that she sat on the bar stool, her
18 story has changed over time.  Initially, she said that
19 she sat on it for a little while, and then it trembled,
20 meaning it wobbled and it caused her to fall backwards
21 onto her buttocks.  She stayed with that -- that story
22 until her deposition.  And I believe that story has
23 changed now to she now claims that the moment she sat on
24 it, she fell backwards and that she believes that the
25 entire top of the bar stool came up with her.  That is

```
 1  not what is evidenced by the documentation records
 2  onboard the ship, although it's possible and it's kind
 3  of unclear.  And then she was transported by
 4  housekeeping and the staff down to the medical center,
 5  and she was seen by the nurse.  She received ibuprofen
 6  and ice for her soft tissue injury to her buttock.  And
 7  she went back to her cabin, and I think she asked her
 8  ice again that evening, or ice was brought to her cabin,
 9  I think that evening.
10      Q   Where -- Where have you seen that she sat on
11  the seat for a little then it trembled?
12      A   So that's what she told the nurse onboard and
13  then what was relayed to our security officer who wrote
14  in the security watchdog summary as to what happened.
15  It was also in your initial claim letter that you wrote,
16  explaining what your client had told you had happened,
17  and that's -- that's pretty much it, that's the
18  shipboard records.  I don't believe -- I'd have to look
19  at the iCare notes that may also say something similar
20  to that in iCare that she was sitting on the seat, and
21  it trembled and she fell.
22      Q   Do you have any documents with you where it
23  states specifically, that says that the seat trembled
24  before she fell?
25      A   Yes, it's in the Security Watch Log Summary, I
```



1  **going to have the madam court reporter read it back to**
2  **you.**
3              THE COURT REPORTER:  Please stand by.
4              (Thereupon, the question was played back on
5              the record.)
6              THE COURT REPORTER:  Did you get that?
7              THE WITNESS:  No, that's not fair.
8              THE COURT REPORTER:  Thank you.
9              MS. WYLIE:  Objection to form.
10             THE WITNESS:  Yes, I did, thank you.
11             THE COURT REPORTER:  Thank you.
12       Q    (By Mr. Tucker)  And why is it not fair?
13       A    Because the Work Orders I do think speak for
14  themselves, and I do think the common interpretation of
15  the term loose or wobbly is that it has not become
16  detached or fallen off.  You had asked hypothetically,
17  is it possible that some of those Work Orders where it
18  uses the word loose they actually mean, detached?  And I
19  conceded that it is possible that a crew member wrote
20  that.  There is no intentional deception by Carnival to
21  hide what's going on with these bar stools.  If they're
22  loose or detached, we want to fix the problem.  So it
23  doesn't matter to us, whether they're loose or wobbly or
24  detached.  We want to make sure that that doesn't happen
25  that yes, don't sit on them.  That's why they're



```
 1  inspected daily, and if there is any issue with them
 2  loose or wobbly or detaching, that the problem is
 3  immediately put into the Work Order System, the bar
 4  stool is put out a service until such time as the Work
 5  Order can be closed out and the situation remedied and
 6  rectified.
 7          MR. TUCKER:  I think we'll take a five-minute
 8      break.
 9          THE WITNESS:  Sure.
10          THE COURT REPORTER:  Okay, off the record.
11          (Off the record.)
12          (Deposition resumed.)
13          THE COURT REPORTER:  Back on the record.
14      Q   (By Mr. Tucker)  All right, Ms. Vazquez, we
15  can agree that the fall through on April --
16          THE WITNESS:  I'm so sorry, you just froze
17      again.
18          THE COURT REPORTER:  We lost you, Mr. Tucker.
19          THE WITNESS:  I think you're asking the day of
20      the incident?
21          MR. TUCKER:  Correct.
22          THE COURT REPORTER:  If you could repeat your
23      question, please?  Mr. Tucker.
24          THE WITNESS:  I don't know if he froze, I
25      don't see him.
```

1  -- the stool was wobbly or somehow became loose when or
2  -- or at the time your client sat on it, and/or detached
3  as we've discussed ad nauseum.
4     **Q    But there's no argument that the waves in the**
5  **ocean cause this to fall -- caused Ms. Altidor to fall?**
6     A    I have not seen the -- the deck log to see
7  what the sea conditions were at the time.  I -- As I sit
8  here today, I do not have any information or evidence
9  that the ship was pitching or rolling in some way and
10 that the seas were rough which would have caused your
11 client to fall off of the bar stool.
12    **Q    Did anybody else fall off any bar stools**
13 **around the same time that Ms. Altidor or any other**
14 **seats?**
15    A    No, not that we found.  There's absolutely no
16 -- no prior incident of anyone even falling off these
17 particular bar stools.  I think in the three years
18 prior, I think actually in the five years prior Monica
19 went and looked for anyone, not just where the
20 allegation was that something was wrong with the bar
21 stool, but also that just somebody either missed, or was
22 drunk, or fell off the bar stool.  There was no prior
23 injury to a passenger noted in the accident reporting
24 system, or our systems, that a passenger was injured in
25 the Michelangelo Lounge.  I do not believe anyone

1    A    So it looks like it might have come into the
2  mail center, I can't really read what it is whether it
3  was -- whether that's the 16th or the 13th, but it was
4  sometime that week.  You have your letter as dated May
5  10th, we do have our mail room receiving it May -- I
6  can't -- I cannot make out the stamp.  It's either --
7  It's either the 16th or the 13th, and then our
8  individual claims team in the legal department were --
9  stamped it of being received by us on May 16th.
10   **Q    And are there any cameras in the Michelangelo**
11 **Lounge or that points in to the Michelangelo Lounge?**
12   A    No.
13   **Q    There's no cameras whatsoever in the**
14 **Michelangelo Lounge?**
15   A    No, no CCTV cameras, no.  I don't think
16 there's any cameras but there's no video recording
17 cameras.
18   **Q    I'm sorry, I -- Maybe you can explain the**
19 **distinction that you're -- you're making because I**
20 **didn't understand that.**
21   A    To my knowledge, there are absolutely no
22 cameras at all, live feed or CCTV in the Michelangelo
23 Lounge.  I know definitively, there are no cameras that
24 would have recorded anything that we would have been
25 able to produce something to you in response to this



1    A    -- about the open deck in the back, that's the
2  adult-only serenity area I think.
3    Q    Okay.  When was the first time the Carnival
4  first anticipated litigation in this matter?
5         MS. WYLIE:  Objection to form.
6    A    When you sent us a claim letter I think,
7  probably.  I think myself as a lawyer had I looked at
8  the circumstances onboard, I - it was very clear your
9  client was gearing up for a claim right away.  But it
10 did not trigger our accident reporting criteria, which
11 is based on the injury severity level, so it didn't
12 trigger the -- the, you know, the accident investigation
13 that we would have liked to have seen happen here.  So I
14 would say, you know, around the second week of May when
15 we received your -- your letter as her lawyer.
16   Q    (By Mr. Tucker)  Okay, so prior to receiving
17 that letter on May 16th of 2019, Carnival was not --
18 anticipating litigation?
19        MS. WYLIE:  Object to the form.
20   A    Right.  I would say that the ship did not
21 anticipate litigation based on the criteria we've given
22 them, the legal department has given them.
23   Q    (By Mr. Tucker)  Was there any reason -- And
24 this may be a silly question, was there any reason that
25 Carnival did not save any video from Ms. Altidor's

